IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

RAYMOND MARTIN SHAMER, III,
   *Defendant*.

Civil No. ELH-24-1640
Criminal No. ELH-20-0441

**MEMORANDUM OPINION**

Defendant Raymond Martin Shamer, III, who is now self-represented,[1] was charged with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count One), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two).  On August 11, 2022, pursuant to a Plea Agreement (ECF 50), Shamer entered a plea of guilty to Count Two.  ECF 49.  Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of no less than three years' imprisonment and at least 20 years of supervised release.  *Id.* ¶ 11.  The government also agreed to recommend a sentence of no more than eight years of imprisonment.  *Id.* ¶ 12.

At sentencing on May 26, 2023, the government sought a sentence of 60 months of incarceration, as well as a lifetime term of supervised release.  *See* ECF 64 at 5.  The defense sought a three-year sentence with 20 years of supervised release.  The Court sentenced the defendant to a term of 50 months of incarceration, along with 45 years of supervised release.  ECF 67.  No appeal was filed.

---

[1] Defendant asserts in his reply, ECF 77, that he has counsel.  But, it is clear that he is without counsel.  He indicates, *id.* at 14:  "Law Clerk prepared motion, Per BOP Program Statement 1315.07."

On June 3, 2024, defendant filed a post-conviction petition under 28 U.S.C. § 2255.  ECF 71 (the "Motion").  The government opposes the Motion (ECF 76), supported by exhibits.  Defendant has replied.  ECF 77.

Defendant contends that he received ineffective assistance of counsel with regard to the length of his supervised release.  In addition, he complains that defense counsel failed to advise defendant of the consequences of his guilty plea, including sex offender registration for life; defense counsel failed to present evidence of defendant's rehabilitative potential; defense counsel failed to object to a two-point enhancement under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") for distribution of child pornography; and defense counsel failed to make full use of the psychological evaluation of the defendant that counsel obtained.

No hearing is necessary.  For the reasons that follow, I shall deny the Motion.

## I.        Factual and Procedural Background

As mentioned, on August 11, 2022, defendant entered a plea of guilty to the offense of possession of child pornography.  ECF 49.  The Plea Agreement (ECF 50) included the following stipulation of facts, in part, *id.* at 12-14:

> Raymond Martin Shamer, III ("Shamer"), age 21, is a resident of Pasadena, Maryland.  As detailed below, Shamer has been involved in the collecting and sharing of child pornography.  Specifically, from at least July 7, 2019 through June 24, 2020, Shamer used online accounts with Kik, Discord, and Dropbox to communicate with others about child pornography, and to distribute and collect child pornography.  Many of the files Shamer collected depicted infants and toddlers engaged in sex acts with adults while bound and subjected to other violent conduct.
>
> On July 7, 2019, Shamer used his Kik account "mastertl2345" to upload the following image file:
>
> **Image-mastert12345        s0l-UPLOADIP-73.201.254.84-UPLOADTIME-2019-07-07-1562533324977.UTC.png:** An image file that depicts a naked prepubescent female lying on her back with her arms above her head and her

legs spread exposing her genitalia.

On August 14, 2019, Shamer used Discord to engage in group chats with other users, and Shamer shared links to his Dropbox account with the group.

*   *   *

On August 14,2019, while in a chat group with other Discord users, Shamer shared the following files:

**Image0.gif:**  A looping video file that depicts an adult male penetrating the mouth of a naked prepubescent female with his penis.

**lmageO.jpg:**  An image file that depicts two naked minor females.  The naked minor female on the right is sitting with her legs spread and her genitalia exposed. She is using her hands to spread the genitalia of the naked minor female on the left. The naked minor female on the left is leaning back in a chair with her knees bent and her legs spread exposing her genitalia.

On August 15, 2019, Shamer uploaded another 26 videos to the same Dropbox account and notified the other members of the chat.  Also on August 15, 2019, Shamer used his Discord account to upload the following files, twice as to each file:

**lmageO.gif:**  An image file that depicts a minor standing before an erect penis with their mouth open.  The adult male's right hand is around the erect penis.

**ImageO.jpg**:  An image file that depicts a naked prepubescent female sitting with her legs spread exposing her genitalia.  An adult male's erect penis is penetrating the prepubescent female's vagina.

On November 25, 2019, Shamer used his Discord account "master #2788" to upload the following file:

**lmageO.jpg**:  An image file that depicts a close-up of a prepubescent female's genitalia.  The prepubescent female's legs are spread and there is an erect penis touching the prepubescent female's vagina.  There is ejaculate on the female's genitalia.

On June 24, 2020, a search warrant was executed at Shamer's residence

in Pasadena Maryland, where he lived with his parents. During the search warrant, investigators seized Shamer's two iPhones and Lenovo computer. These items are further described as:

    a.  A Lenovo Yoga, model: 920-131KB laptop, S/N: PF0VRSPG;

    b.  An Apple iPhone, S : C39Z3EF8KPFT; and

    c.  An Apple iPhone 6S, SIN: FK4RXWR6HFLW.

The digital devices were forensically examined and investigators located the following files, among others, on the devices:

From the Lenovo computer (seized from Shamer's bedroom)

▶ Hundreds of files of child pornography, including images depicting prepubescent children engaged in sexually explicit conduct with adults. Many of the images depicted bound infants and toddlers engaged in sexually explicit conduct, including the following:

    o  **img 7044.jpg**: Two side-by-side images that depict the same naked prepubescent female. The photo on the right depicts the victim with white tights that are pulled down to her ankles, binding her feet together; her legs are spread exposing her genitalia. A plastic bag with a rope is over her head with a rope at the bottom and the word "rape" written on her stomach. On the image on the left depicting the same prepubescent female, her legs are in the same position still spread. The plastic bag is still over her head with the rope around the neck and the words "nepi rape" [sic] is written on her stomach.

    o  **im2 0790.mov:** A video, 8 minutes, and 27 seconds in duration, that depicts a prepubescent female laying on a bench, her thighs tied to the bench with white rope, and white rope around her stomach. An adult male is penetrating the bound victim's mouth with his erect penis.

▶ Many of the files distributed by Shamer described above were located on the Lenovo computer, including the files he distributed on August 14, 2019.

From the Apple iPhone, S/N: C39Z3EF8KPFT (seized from Shamer's bedroom):

▶ More than 50 depictions of prepubescent minors engaged in sexually

explicit conduct, including at least 15 images of bondage and bestiality depicting prepubescent children.

▶ Files distributed by Shamer described above were located on the Lenovo computer.

The Apple iPhone 6S S/N: FK4RXWR6HFL W (seized from a kitchen drawer) also contained depictions of minors engaged in sexually explicit conduct.

More than 1,000 images of child pornography were located on the [sic] Shamer's devices and accounts. Shamer's Dropbox account included the following subfolders: "New," "Under 18," "Videos," and "Videos CP."

At the guilty plea proceeding on August 11, 2022, in accordance with Fed. R. Crim. P. 11, the Court carefully reviewed with the defendant the terms of the Plea Agreement, as well as the rights that defendant waived by pleading guilty. *See* ECF 76-1 (Rule 11 Tr.).

Paragraph 4 of the Plea Agreement (ECF 50) is titled "Sex Offender Registration." Among other things, the Court told the defendant the following, ECF 76-1 at 11:

> [A]s a consequence of your conviction for the crimes to which - - or the crime to which you've pled guilty, you must register as a sex offender in the place where you reside, are an employee, and/or a student. This is under a statute called the Sex Offender Registration and Notification Act, sometimes called SORNA, and also you must comply with corresponding laws of the state where you live, and failure to do so can subject you to further prosecution.

The Court asked defendant if he understood what the Court explained. Shamer responded, "Yes, Your Honor." *Id.*

With respect to supervised release, the Court explained that defendant faced up to a lifetime of supervised release. *Id.* at 11-12. And, the Court added, *id.* at 12:

> That's an issue that will be decided in the case at the appropriate time. But the important point is it's a period of time, many years, conceivably, as long as up to life. And this is something the judge imposes at the time of sentencing, to follow whatever prison sentence is imposed on a defendant.

Again, the defendant was asked if he understood.  *Id.*  He responded, "Yes, Your Honor." *Id.*

Moreover, the Court reviewed the parties' anticipated Guidelines calculations.  Of relevance here, the Court advised Shamer that under  ¶ 7(c) of the Plea Agreement, two levels are added to the offense level pursuant to U.S.S.G. § 2G2.2(b)(3)(F), because the defendant engaged in distribution.  *See* ECF 76-1 at 16-17.  Again, the Court asked the defendant if he understood. *Id.* at 17.  He responded, "Yes, Your Honor."  *Id.*

Prior to sentencing, defense counsel submitted a sentencing memorandum.  ECF 62.  He also submitted several exhibits, including an "Evaluation" of defendant performed in August 2020 by Fred Berlin, M.D., Ph.D.  *Id.* at 6-15.[2]  At the time, Dr. Berlin was, among other things, an Associate Professor of Psychiatry and Behavioral Sciences at the Johns Hopkins University School of Medicine; Founder, The Johns Hopkins Sexual Disorders Clinic; and Director, National Institute for the Study, Prevention and Treatment of Sexual Trauma.  *Id.* at 15.  Dr. Berlin observed that there was no evidence that defendant ever attempted to engage a child in sexual activities.  *Id.* at 13.

The defense also submitted an updated report from Dr. Berlin, dated March 13, 2023.  *Id.* at 16-17.  Dr. Berlin reported that defendant "has been actively participating in regularly scheduled group therapy sessions" and "receiving monthly injections of a sex-drive-lowering medication (Depo-Lupron) to diminish urges . . . to view pornographic images of children via the Internet." *Id.*  Further, Dr. Berlin opined that defendant was "fully dedicated" to therapy to control any "unwanted sexual cravings."  *Id.*

---

[2] The exhibits were docketed as part of the sentencing memorandum.

Defendant was born in July 2000.  ECF 53 (Presentence Report or "PSR"), at 2.  At sentencing on May 25, 2023, he was 22 years of age.  There were no disputes regarding the calculation of the sentencing Guidelines.  *See* ECF 76-3 (Sentencing Tr.).  After deductions for acceptance of responsibility under U.S.S.G. § 3E1.1, defendant had a final offense level of 30.  *Id.* at 9; ECF 53, ¶ 46.  With a Criminal History Category of I (ECF 53, ¶ 50), the Guidelines called for a sentence ranging from 97 months to 121 months of imprisonment and a term of supervised release ranging from five years to life.  ECF 76-3 at 9; ECF 53, ¶¶ 71, 74.

Consistent with the "C plea," the government recommended a sentence of five years of imprisonment, which constituted a significant downward variance from the Guidelines, and a lifetime term of supervised release.  The government also moved to dismiss Count One of the Indictment, charging the defendant with distribution of child pornography.  *See* ECF 76-3 at 14.

Defendant requested a sentence of three years' imprisonment and a term of supervised release of 20 years.  Counsel cited the findings of Dr. Berlin and comments of the defendant, the defendant's parents, and the defendant's brother.

In its allocution, the government recognized that the defendant was "young."  ECF 76-3 at 15.  But, despite defendant's age, the government explained that "one of the primary reasons" that defendant was charged federally was "the nature of the images that he possessed."  *Id.*  It said, in part, *id.*:  "[T]hese are truly some of the worst images that some of the most experienced investigators in this case in this area have ever seen.  And it wasn't just one or two."  The government continued, *id.* at 15-16:

> It's clear that in addition to being sexually attracted to prepubescent minors engaged in sex acts, which was the vast majority of his collection, there was also a sexual attraction that related to depictions of violence involving really young prepubescent minors and toddlers with violence . . . . And that type of sexual attraction to society's most vulnerable people speaks to the danger that the defendant presents.

With respect to the length of supervised release, the government stated, *id.* at 17:

> [G]iven the nature of these offenses and the danger that indicates the defendant poses to the public, the Government's view is that the Court should impose as long a period of supervised release as you have the tools to do so and deal with adjusting that less if necessary down the road.

The defense presented a comprehensive allocution, including statements from various family members. ECF 76-3 at 19-53. As to the length of supervised release, defense counsel said, in part, *id.* at 50, 51:

> [Defendant] is 22 years old right now, and if the Court imposes per the plea agreement the minimum required amount of supervised release of 20 years, he will be 42 when he comes off of that. You've had a chance to be able to see the kind of robust connections he has and the folks that will be much more on the spot than any probation agent can.

> *   *   *

> I'd ask that the Court would see that 20 years would be an ample amount of time to have the very, very strict conditions that he will have on his supervised release.

Defendant also allocated. *Id.* at 54. He said, in part:

> Every time that I have to think about what I did I get physically ill, sick to my stomach. I don't - - I don't like thinking about what I did. It hurts me.

Defendant added:

> When I was young, I didn't know of any place or anyone that dealt with this. Society taught me that if I was to say something about this, immediately I'd just be arrested. I think that was what kind of drove me down to keeping it to myself up until the warrant was served. I would like at least to have the chance to help someone else before they act on their impulses. I'm sorry. I'm regretful for what I've done.

As mentioned, the Court imposed a sentence of 50 months' imprisonment, to be followed by 45 years of supervised release. ECF 67. With respect to supervised release, the Court said, ECF 76-3 at 63-64:

8

I can't agree with the Government's request for lifetime supervision.  But the defendant is very young.  He's 22 years of age now.  This crime began, at least as far as I'm aware, the problem dates to maybe age 14 or so, I think the crimes here began around age 18.  He's going to be very young when he gets out, and that cuts both ways in my view.  Lifetime seems draconian, but at the other end with what I think is hopefully a long life ahead of him, he does need a lengthy period of supervision.  I believe there are appropriate cases where probation does seek to terminate early, so that would always be a possibility.  But for now, the Court is going to impose a period of supervised release of 45 years, which I think is very reasonable considering his age and the nature of the offense.

The Court also imposed mandatory, standard, and special conditions of supervised release. *See* ECF 67.  Defendant did not appeal.

## II.     Legal Standards

### A.  Section 2255(a)

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Relief under § 2255 is meant to remedy fundamental constitutional, jurisdictional, or other errors.  It is reserved for situations in which failure to grant relief "'inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill,* 368 at 428).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to

render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Addonizio*, 442 U.S. at 185 (quoting *Hill*, 368 U.S. at 428).  In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence.  *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

The scope of collateral review under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  "Accordingly, at least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."  *Foster*, 578 U.S. at 519 (citing, *inter alia*, *United States v. Roane*, 378 F.3d 382, 397 n.7 (4th Cir. 2006)).  Indeed, "it is well-settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'"  *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)) (ellipsis in *Dyess*); *see United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018) (same).

In addition, a failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence."  *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see United States v. Green*, 67 F.4th 657, 666 (4th Cir. 2023); *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485

(1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *Linder*, 552 F.3d at 397.

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492–93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Carrier*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven

"*actual* and substantial disadvantage" that "infect[s]" the petitioner's "entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).  Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a procedural default in the absence of a showing of cause.  *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014).  Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent  . . . ." *Carrier*, 477 U.S. at 496.

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623.  Notably, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494.  In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his

incarceration is a miscarriage of justice.'"  *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).  It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ."  *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010).  Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. LeMaster*, 403

F.3d 216, 220–23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, there are no credibility issues here.  No hearing is necessary.

## B.  The Guilty Plea

As noted, defendant entered a plea of guilty on August 11, 2022, to the offense of possession of child pornography.  ECF 49; ECF 50.  In the context of a post-conviction petition, the guilty plea is significant.

A guilty plea represents an admission by a defendant that "he actually committed the crime" in issue and that "he is pleading guilty because he is guilty."  *United States v. Hyde*, 520 U.S. 670, 676 (1997).  A guilty plea also constitutes a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*; *see also Bousley v. United States*, 523 U.S. 614, 618 (1998).

Thus, to be valid, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Moreover, in order for a guilty plea to be valid, it must be voluntary. *Brady*, 397 U.S. at 748.  And, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same).  Once a guilty plea is entered, however,

there is "a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.3d 1389, 1394 (4th Cir. 1992).

As discussed, *infra*, the plea bargaining process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). Thus, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam); *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.

When, as here, a judgment of conviction based upon a guilty plea is later subjected to a collateral attack, such as by a § 2255 petition, the court's inquiry concerning the validity of the guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). But, in *Marshall v. Lonberger*, 459 U.S. 422 (1983), the Court recognized that "'it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'" *Id.* at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

Notably, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Thus, "a defendant's solemn declarations

in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74); *see United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1992) (stating that defendant's statements at the plea hearing are "strong evidence of the voluntariness of his plea.").

Conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

Moreover, the Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (2019); *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse, from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816.

In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.* Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . . ." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815.  Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence."  *Id.*  And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

### C.  Ineffective Assistance of Counsel

Defendant complains that he received ineffective assistance of counsel.  I turn to review the principles that apply to such a claim.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). Ineffective assistance of counsel is a well recognized basis for collateral relief. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged framework set forth in *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Sutherland*, 103 F. 4th 200, 207 (4th Cir. 2024); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the

deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149*; United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see also United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *Mayhew*, 995 F.3d at 176; *Pettiford*, 612 F.3d at 277.

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Sutherland*, 103 F.4th at 207-08; *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has recognized that the "first prong sets a high bar." *Buck*, 580 U.S. at 118; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." "'*Strickland* does not guarantee perfect representation, only a reasonably competent attorney.'" *Cox v. Weber*, 102 F.4th 663, 675 (4th Cir. 2024) (quoting *Harrington*, 562 U.S. at 110) (cleaned up).  Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent

assistance.'" *Buck*, 580 U.S. at 118 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).  Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).  There, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.

Under the second *Strickland* prong, known as "the prejudice prong,"  the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. ___, ___, 144 S. Ct. 1302, 1310 (2024) (death penalty case). However, a petitioner is not

entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

As discussed, defendant entered a plea of guilty pursuant to a Plea Agreement.  Of relevance, the plea bargaining process is regarded as "an essential aspect of the administration of criminal justice . . . ." *Lewis*, 633 F.3d at 269.  Therefore, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann*, 397 U.S. at 771; *Murillo*, 927 F.3d at 815; *Hall*, 771 App'x at 227; *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.

In *Hill v. Lockhart*, *supra*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citation omitted). But, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The prejudice prong of the *Strickland* test is "slightly modified" in the context of plea bargaining. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit

explained, *id.* (quoting *Hill*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *see also Richardson*, 820 F. App'x at 226.

*Hooper*, 845 F.2d 471, is illustrative. There, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. *Id*. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.

In the context of a guilty plea, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have entered a plea of guilty. *Murillo*, 927 F.3d at 817. As discussed below, there is no basis on which to find that, but

for defense counsel's alleged errors, there is a reasonable probability that defendant would have rejected the Plea Agreement.

### III.   Discussion

As the transcript reflects, the Court conducted a thorough Rule 11 proceeding, in which it carefully reviewed the terms of the Plea Agreement with the defendant, the consequences of the guilty plea, the sentencing Guidelines, and the rights the defendant had and waived by pleading guilty. *See* ECF 76-1. During the guilty plea proceeding, the Court also inquired about defendant's satisfaction with his counsel, and defendant stated that he was fully satisfied with the services of his attorney. *Id.* at 7-8. The Court concluded that the defendant entered his plea of guilty freely and voluntarily, with full knowledge of the rights he had and the rights he waived. *Id.* at 46-47.

In his Motion, defendant asserts multiple grounds of ineffective assistance of counsel. I discuss the contentions, in turn.

Defendant alleges that counsel failed to object to the imposition of "lifetime registration." However, defendant is required by law to register as a sex offender. *See* ECF 50, ¶ 4. And, as reviewed earlier, at the Rule 11 proceeding the Court advised the defendant of his obligation to comply, *inter alia*, with the requirements of the Sex Offender Registration and Notification Act ("SORNA") and the laws of the state where he lives. *See* ECF 76-1 at 11. Moreover, sex offender registration under SORNA and state law is a mandatory condition of supervised release. ECF 76 at 3. Trial counsel could not have been ineffective in this regard because the imposition of a mandatory condition is, indeed, mandatory.

Defendant also claims that his counsel was ineffective for failing to challenge the 45-year term of supervised release imposed by the Court. ECF 71 at 4. He contends that the term is both "unreasonable" and "unconstitutional."

In the Plea Agreement, the parties agreed to a term of supervised release of at least 20 years.  *See* ECF 50, ¶ 11.  And, the statute provides for up to a lifetime term.  *See id.*, ¶ 3.  The government sought a term of lifetime supervision.  Defense counsel advocated for a 20-year term of supervised release, the lowest term allowed under the Plea Agreement.  ECF 76-3 at 50-51.  In support of the request, defense counsel referenced the defendant's age of 22 at the time of sentencing, and his approximate age of 42 upon completion of a 20-year term of supervised release, as well as his strong family support.

The Court rejected the government's request for lifetime supervised release.  However, the Court also rejected the defendant's request for a term of 20 years.  In reaching its decision to impose a term of 45 years, the Court noted the particularly disturbing nature of the images, *id.* at 56, the length of time of defendant's attraction to images depicting the sexual abuse of minors, *id.* at 60-61, and the need to prevent the defendant from reoffending.  *Id.* at 62.  As indicated, the Court said, in part, *id.* at 64: "[B]ut at the other end with what I think is hopefully a long life ahead of him, he does need a lengthy period of supervision. . . .  But for now, the Court is going to impose a period of supervised release of 45 years, which I think is very reasonable considering his age and the nature of the offense."

In all likelihood, from defense counsel's perspective, the length of the sentence itself was a critical issue.  Although the Court did not impose the term of sentence sought by defendant (three years), counsel was able to persuade the Court not to adopt the government's recommendation of five years.  Defense counsel was not ineffective merely because the Court disagreed with his request concerning supervised release.

The defendant next claims ineffective assistance because his counsel did not object to the two-point enhancement for distribution of pornography.  He argues that he only pled guilty to

possession of child pornography, not distribution.  ECF 71 at 5.  The enhancement was specifically contemplated in the Plea Agreement, which the defendant read and understood, and to which he agreed.  ECF 50, ¶ 7(c).  Moreover, the factual stipulation, to which defendant agreed, expressly supports the enhancement.  *See* ECF 50 at 12-15.  Thus, counsel was not ineffective for failing to object to the agreed-upon enhancement.  In any event, the C plea did not turn on defendant's offense level.

Defendant also complains of ineffective assistance because defense counsel did not have the defendant "more fully" evaluated for a learning disability or other developmental impairment, based on what Dr. Berlin noted in his evaluation.  ECF 71 at 7.

As indicated, defense counsel hired a well respected expert in the field, Dr. Berlin, to evaluate the defendant to determine if he has a sexual disorder, to assess his risk to the community, and to provide a treatment recommendation.  In the evaluation of the defendant, Dr. Berlin stated that the defendant was of average intelligence, but he might have a learning disability or some other kind of developmental impairment.  ECF 62 at 15.  Dr. Berlin stated, in part, *id.* (emphasis added):

> Although I have not diagnosed any psychiatric condition other than a Paraphilic Disorder ["the primary elements of which are heterosexual pedophilia, scatologia, and voyeurism"] the patient may also have a learning disability, or some other kind of developmental impairment, given the fact that he has experienced difficulties in achieving some of his academic ambitions.  His primary care physician has also been prescribing him medication for ADHD.  *Psychological testing may be useful in further clarifying these matters.*

Defendant claims that defense counsel's failure to obtain additional testing was constitutionally ineffective.  Any learning disability seems entirely tangential to a sentence determination.  Nor has the defendant presented the results of any subsequent evaluation or records to establish what such testing would have revealed or how it would have affected the sentence.  *Cf.*

*United States v. Helton*, 782 F.3d 148 (4th Cir. 2015) (concluding that a lifetime term of supervised release was reasonable for a 21-year-old who pled guilty to possession of child pornography under 18 U.S.C. § 2252(A) with an offense level of 28 and a criminal history category of I).

In short, defendant's claim is without merit.

### IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[3]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck*, 580 U.S. at 114. When the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).

Defendant has not made a substantial showing that his constitutional rights were denied. Therefore, I decline to issue a COA.

### V.    Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 71). I also decline to issue a COA.

---

[3] The denial of a COA by the district court does not preclude defendant from seeking a COA from the Fourth Circuit.

An Order follows, consistent with this Memorandum Opinion.

Date:   August 27, 2024                                    _____/s/_____

Ellen Lipton Hollander
United States District Judge